### In re PEONAGE CHARGE.

(Circuit Court, N. D. Florida. May 23, 1905.)

1. PEONAGE—DEFINITION.

 Peonage is a condition of compulsory service, based on the indebtedness of the peon to the master, which indebtedness is the criminal cord by which the peon is held to the master's service.

2. SAME—FEDERAL CONSTITUTION.

 Const. U. S. Amend. 13, providing that neither slavery nor involuntary servitude, except as a punishment for crime, shall exist in the United States, or any place subject to its jurisdiction, forbids involuntary servitude for the payment of debt within the jurisdiction of the national government, whether created by contract, by criminal individual force, by municipal ordinance, state law, or otherwise.

3. SAME.

 If a person desiring to have a servant returned to him to work out a debt causes such servant to be arrested on a warrant procured by the

master, and after incarceration the master procures the servant's release on his promise to return to his master's employment to continue to work out a debt, the master is guilty of peonage, prohibited by Rev. St. U. S. § 5526 [U. S. Comp. St. 1901, p. 3715], provided the servant had been charged with the crime for the purpose of procuring his arrest and incarceration, and to enable the master to extort from the servant a promise to return and work out the debt.

SWAYNE, District Judge (charging grand jury). On March 2, 1867, the United States Congress passed the following statute, which is known as section 1990 of the Revised Statutes [U. S. Comp. St. 1901, p. 1666]:

"The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in the territory of New Mexico, or in any other territory or state of the United States, and all acts, laws, resolutions, orders, regulations or usages of the territory of New Mexico, or of any other territory or state which have heretofore established, maintained or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any person as peon, in liquidation of debt or obligation, or otherwise, are declared null and void."

And section 5526, Rev. St. [U. S. Comp. St. 1901, p. 3715], passed at the same time, is as follows:

"Every person who holds, arrests, returns, or causes to be held, arrested or returned, or in any manner aids in the arrest or return of any person to a condition of peonage, shall be punished by a fine of not less than one thousand, nor more than five thousand dollars, or by imprisonment not less than one year, nor more than five years, or by both."

The term "peonage," therefore, is not a new one, though some of you may not have been familiar with the statute, but the offense was more or less common in certain sections of the country, and, I believe, was first called to the attention of this court by Commissioner Cubberly about April, 1901. So far as I am informed, that case—United States v. Clyatt—was the first one presented in this part of the country. At that trial certain questions of law were raised for the first time, and these have been finally passed upon by the Supreme Court of the United States. 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726. During the period in which the appeal in the Clyatt Case was pending, the government hesitated to prosecute any others on similar charges, and thus a number of such causes have accumulated for your consideration, and it is incumbent upon the government's officers to present these matters to your attention; hence I will give you a few words of explanation of the law governing your action thereon.

Peonage is a form of slavery, and was abolished and prohibited by the acts above named. It may be defined as a condition of compulsory service based upon the indebtedness of the peon to the master. The principal fact is the indebtedness. This indebtedness of the peon to the master is the criminal cord by which they are held bound to the master's service. Upon this is based a condition of compulsory service. Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the origin, but none in the character, of the servitude. The one exists where the debtor voluntarily contracts to enter the

service of his creditor to work out a debt. The other is forced upon the debtor by some apparent, but void, provision of law, or by the exercise of criminal force, that is sometimes the perfection of cruelty. But peonage, however created, is compulsory involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the servitude is enforced. A clear distinction exists between peonage and the voluntary performance of labor in payment of debt. In the latter case the debtor, though contracting to pay his debt in labor, can elect at any time to break it, and no law compels a continuance of the service. That which is contemplated to be prohibited by the statute is compulsory service to secure the payment of a debt.

The thirteenth amendment to the federal Constitution is as follows:

"Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist in the United States, or any place subject to their jurisdiction."

This amendment denounces a status or condition irrespective of the manner or authority by which it is created. It forbids slavery and involuntary servitude wherever or however attempted within the jurisdiction of the national government, whether created by contract, by criminal individual force, by municipal ordinance or state law, and in whatever form, or however named. It operates directly on every citizen of the republic, regardless of his position, occupation, or influence, or the location of his residence.

Section 5526 of the Revised Statutes declares a punishment for every person who holds, arrests, returns, or causes to be held, arrested, returned, or in any manner aids in the arrest or return of, any person to a condition of peonage. Three distinct acts are here mentioned: First, holding; second, arresting; third, returning. Either may be the subject of indictment and punishment. A party may hold another in a state of peonage without ever having arrested him for that purpose. He may arrest an individual for the purpose of placing him in a condition of peonage, or he may, after one has fled from a condition of peonage, return him to it; and this whether he himself claims the service or is acting as an agent for another to enforce the return. And the fact that the warrant produced or used by such agent, who may claim to be an officer of the law, is invalid or bogus, is an all-important question for the grand jury to determine. If the jury should find that certain formal and customary proceedings had been gone through, though merely as a cover for the crime, they would have little difficulty in finding an indictment under one of the three phases of the crime denounced by the statute. If a person desiring to have a servant returned to him to work out a debt should cause that servant to be arrested on a warrant procured directly or indirectly by him, and after incarceration of the servant should go to the jail and procure his release after he had promised to return to the employment of the master to continue to work out a debt, the master would be guilty of the crime denounced by the statute, provided the jury

believed that the servant had been charged with the crime for the purpose of procuring his arrest and incarceration, and to enable the master to bring to bear all his influence in procuring the release from jail of the servant on a promise by the servant to return to work out the debt. In other words, if the circumstances attending the case leads the jury to believe that the master procured the arrest because of the abandonment by the servant of his employment, and for the purpose of placing the servant in such a situation that he was not free to refuse to return to the master's employment, but was simply given the option of remaining in jail and meeting the charges brought against him by the master, of whatever character these charges may be, or of returning to the employment, the master would not only be liable, but any officer of the law who was the instrument of the master in the proceeding, and who knew of the purpose of the prosecution, would be equally liable. It cannot be contended that this statute is a trap in which to catch the innocent. A guilty knowledge of the unlawful purpose of the arrest would be essential to the making out of the crime against the officer. The arrest must be knowingly, for the purpose of returning the person to a prior condition of peonage or servitude, or placing him therein to work out a debt.

Many artful methods for evading the effect of this statute have been devised, but none of them will avail if the juries of this country will discharge their duties fearlessly and impartially. Where it is found that a few hours after the servant is safely lodged in jail the master appears and proceeds to detail to him the severe results of the prosecution pending against him, and his willingness to help him out of his difficulty if he will return to work, producing on the mind of the servant a condition which leaves him no choice but to return to his employment, the master is guilty of the crime; or at least these circumstances, coupled with others, should warrant you in returning a true bill. You must regard all the conditions and circumstances surrounding the cases, and determine what the motive of the prosecution was, whether or not the master directly or indirectly causes or procured the arrest, and whether the legal proceedings were taken for the purpose of creating a condition of mind in the servant whereby little or no choice was left to him in returning to the employment. The return implies the prior existence of some state or condition of peonage; that is to say, the servant must have been working wholly or in part to pay an existing debt.

The result of the proceedings to arrest may be of two kinds: First, after the arrest, and before the trial, the servant, at the solicitation of the master, may return to the service, the officer permitting the dismissal of the charges; or, second, there may be some form of trial, a nominal or substantial fine imposed, which the master pays, and adds to the indebtedness of the servant, and returns the servant to the employment. But it makes little difference what outward form the proceedings may take, if the intention of the master is illegal, as already described.

138 F.—44

I have described to you the most insidious form of peonage, the form hardest to deal with, because the act of the master is so covered up with legal forms as to give it the semblance of a just criminal proceeding against the servant; but in the exercise of your good sense you will be able to see through any subterfuge that may be adopted, and to get at the real intention of the parties.

Under these instructions you will have little trouble with the other forms of peonage—in the use or in the employment of "woods riders" and the forcible and illegal arrest without any color of law, or of the holding under threat or otherwise, of persons to work out a debt. These practices are not only illegal, but have been condemned by all our good people. They are extremely reprehensible because of the lawless condition to which they ultimately lead. In communities where such conditions exist, murders are frequent; in many instances traceable directly to these practices. It has come to the knowledge of this court that in two instances men have been so emboldened by these practices that they have extended their criminal force to respectable white persons. Parties are now standing indicted before this court, and have pleaded guilty to holding in bondage a respectable white man and his wife in one instance, and in another a white boy of good parentage, whom the party so charged on several occasions has returned to work by force and arrest to work out a debt, and to that end has scoured the woods for miles with "woods riders" to hunt up the fleeing servant.